Devorah **CRUPAR-WEINMANN**, individually and on behalf of all others similarly situated, Plaintiff-Appellant,

v.

**PARIS BAGUETTE AMERICA, INC.,** doing business as Paris Baguette, Defendant-Appellee.*

**Docket No. 14-3709**
**August Term, 2015**

United States Court of Appeals, Second Circuit.

Argued: October 28, 2015

Decided: June 26, 2017

---

* The Clerk of Court is respectfully directed to amend the caption to conform to the caption above.

Gregory A. Frank (Marvin L. Frank, on the brief), Frank LLP, New York, NY; Khaled (Jim) El Nabli, Joseph H. Lilly, and Peter Y. Lee, Nabli & Associates, P.C., New York, NY, for Plaintiff-Appellant.

Joshua A. Berman (Mary Jane Yoon and Eric L. Unis, on the brief), Troutman Sanders LLP, New York, NY, for Defendant-Appellee.

Before: KATZMANN, Chief Judge, POOLER and CHIN, Circuit Judges.

KATZMANN, Chief Judge:

When does a bare procedural violation of a statutory right constitute an injury in fact sufficient for standing to bring suit in federal court? Although the Supreme Court recently addressed this question in *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), *as revised* (May 24, 2016), the inquiry is necessarily context-specific to the statutory right in question and the particular risk of harm Congress sought to prevent. Here, we address this issue as it relates to the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), Pub. L. No. 108-159, 117 Stat. 1952 (codified as amended at 15

U.S.C. § 1681c(g)), an issue of first impression in this Circuit. Guided by unambiguous statutory language that a receipt with a credit card expiration date does not raise a material risk of identity theft, and finding that the bare procedural violation alleged by the plaintiff does not present a material risk of harm, we conclude that allegations in her amended complaint do not satisfy the injury-in-fact requirement necessary to establish Article III standing to bring suit. Accordingly, we **AFFIRM** the judgment of the district court dismissing her amended complaint for lack of standing.

## BACKGROUND

### I. Factual History

The brief factual history of this case is drawn from plaintiff's amended complaint filed after we remanded the case to the district court. FACTA seeks to prevent identity theft by, among other things, requiring that venders who accept credit and debit cards not print "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). When plaintiff Devorah Crupar-Weinmann purchased food at Paris Baguette's midtown Manhattan restaurant on September 19, 2013, she paid for it with a credit card and received a printed receipt displaying her card's expiration date. She alleges that during this time period, "Paris Baguette routinely gave receipts to its customers at the point of sale at its various retail stores which displayed the expiration dates of the customers' credit and/or debit cards, in violation of the requirements of FACTA." Am. Compl. ¶ 17. The plaintiff's amended complaint is otherwise devoid of specific factual allegations concerning her interaction with the restaurant or any consequences that stemmed from the display of her credit card's expiration date on the printed receipt. Instead, her complaint emphasizes that Congress's goal in passing FACTA was to reduce the risk of consumer identity theft by "mak[ing] it more difficult for identity thieves to obtain consumers' [c]ard information by reducing the amount of information identity thieves could retrieve from found or stolen [c]ard receipts." Id. ¶ 26. She further alleges that by "knowingly and recklessly print[ing] ... [c]ard expiration dates on the [c]ard receipts," Paris Baguette violated FACTA, id. ¶ 92, and that doing so "created a real, non-speculative harm in the form of increased risk of identity theft," id. ¶ 29.

### II. Procedural History

In 2013, Crupar-Weinmann filed her initial complaint, which the defendant moved to dismiss, primarily on the basis that she failed to plead facts sufficient to allege plausibly that Paris Baguette *willfully* violated FACTA. Following full briefing and oral argument, the district court granted the defendant's motion to dismiss. See *Crupar-Weinmann v. Paris Baguette Am., Inc.*, No. 13 CIV. 7013 JSR, 2014 WL 2990110, at *1, *5 (S.D.N.Y. June 30, 2014). The district court dismissed the plaintiff's claims with prejudice, "convinced that plaintiff would not be able to plausibly plead a claim for willful violation of FACTA, even if she were given the opportunity to replead." Id. at *5. Crupar-Weinmann then moved for reconsideration, asserting both that the district court misconstrued the pleading standard for a willful violation of FACTA and that it erred in dismissing her complaint with prejudice and without leave to amend; the court denied this motion on both grounds. See *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 41 F.Supp.3d 411, 413–14 (S.D.N.Y. 2014).

Crupar-Weinmann then appealed, and on October 28, 2015, we heard argument in

both her case and a related case involving a similar legal question, *Katz v. The Donna Karan Company, LLC, et al.*, No. 15-464. Shortly thereafter, the Supreme Court heard oral argument in *Spokeo*, which raised questions concerning whether a plaintiff who "allege[s] a bare procedural violation, divorced from any concrete harm, [can] satisfy the injury-in-fact requirement of Article III." 136 S.Ct. at 1549. We held both this case and *Katz* until the Court rendered its decision in *Spokeo*, which clarified standing doctrine in ways that we explain in more detail below. Given *Spokeo*'s elucidation, we subsequently vacated and remanded both cases "to allow plaintiffs an opportunity to replead their claims to comport with the pleading standards set forth in *Spokeo*, and to allow the district courts to address any standing questions in the first instance," and we retained appellate jurisdiction over the outcomes. *Cruper-Weinmann v. Paris Baguette Am., Inc.*, 653 Fed.Appx. 81, 82 (2d Cir. 2016).

On remand, Crupar-Weinmann amended her complaint, Paris Baguette again moved to dismiss, and the district court again dismissed the plaintiff's complaint with prejudice, this time concluding that she lacked standing to bring claims for violations of FACTA's requirements. *Cruper-Weinmann v. Paris Baguette Am., Inc.*, 235 F.Supp.3d 570, 2017 WL 398657 (S.D.N.Y. Jan. 30, 2017). Crupar-Weinmann then moved to renew her appeal; we granted that motion, and the parties submitted letter briefing addressing the propriety of the district court's dismissal in light of *Spokeo*.

## DISCUSSION

## I. Standard of Review

■ We review *de novo* the district court's decision to dismiss the complaint for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), "construing the complaint in plaintiff's favor and accepting as true all material factual allegations contained therein." *Donoghue v. Bulldog Inv'rs Gen. P'ship*, 696 F.3d 170, 173 (2d Cir. 2012).

## II. Standing to Allege A Bare Procedural Violation of Law

On appeal, the plaintiff challenges the district court's dismissal of her amended complaint on the basis that she did not plead a concrete injury in fact sufficient to establish Article III standing to bring suit against Paris Baguette.

### A. Standing Doctrine After *Spokeo*

■ In *Lujan v. Defenders of Wildlife*, the Supreme Court explained that the "irreducible constitutional minimum of standing contains three elements": (1) "an injury in fact" to "a legally protected interest" that is both "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," (2) "a causal connection between the injury and the conduct complained of," and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (citations and internal quotation marks omitted). As here, the controversy in *Spokeo* implicated the "concrete and particularized" element of injury-in-fact standing analysis. *See Spokeo*, 136 S.Ct. at 1545, 1548. There, the Court considered a claim against Spokeo, a "people search engine," alleging that when Spokeo trawled online sources to generate a profile of the plaintiff, it collected and reported inaccurate information about him, including his age, education, and marriage and family status, as well as job and socioeconomic position. *Id.* at 1544, 1546. The plaintiff asserted that Spokeo quali-

fied as a "consumer reporting agency" under the Fair Credit Reporting Act of 1970 ("FCRA"), 84 Stat. 1127 (codified as amended at 15 U.S.C. §§ 1681 *et seq.*), and that, as a result, Spokeo was required "to 'follow reasonable procedures to assure maximum possible accuracy' of consumer reports, ... to limit the circumstances in which such agencies provide consumer reports 'for employment purposes,' ... and to post toll-free numbers for consumers to request reports," among other protections. *Spokeo*, 136 S.Ct. at 1545 (quoting 15 U.S.C. §§ 1681e(b), 1681b(b)(1), 1681j(a)). Importantly, as with FACTA, violators of the FCRA can be liable for both actual and statutory damages. *Id.* The *Spokeo* plaintiff's putative class action lawsuit alleged that in publishing incorrect information about the plaintiff and similarly situated individuals, Spokeo willfully failed to comply with the FCRA's requirements, *id.* at 1546, and the case turned on whether harms stemming from bare procedural violations of the FCRA could satisfy the concreteness element of injury-in-fact standing analysis.

The Supreme Court concluded that while the *Spokeo* plaintiff could not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III," that did "not mean ... that the *risk* of real harm cannot satisfy the requirement of concreteness." *Id.* at 1549 (emphasis added). After all, as "Congress is well positioned to identify intangible harms that meet minimum Article III requirements, [and] its judgment is also instructive and important," Congress "may 'elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law.'" *Id.* (quoting *Lujan*, 504 U.S. at 578, 112 S.Ct. 2130). Given the variety of ways a consumer reporting agency could run afoul of the FCRA, the Court recognized that while any given "violation of one

of the FCRA's procedural requirements may result in no harm," "Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk." *Id.* at 1550. Thus, the critical question for standing purposes is "whether the particular procedural violations alleged in this case entail *a degree of risk* sufficient to meet the concreteness requirement." *Id.* (emphasis added). The Court remanded the case for the lower court to engage in this inquiry in the first instance. *Id.*

## B. Post-*Spokeo* Second Circuit Standing Doctrine

■ We recently had the opportunity to apply *Spokeo* to another consumer class action lawsuit concerning a statute with a wide-ranging set of procedural rights and requirements, the Truth in Lending Act ("TILA"), Pub. L. No. 90–321, 82 Stat. 146 (1968) (codified as amended at 15 U.S.C. §§ 1601 *et seq.*), in *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016). Unlike the single violation alleged here, *Strubel* involved a variety of alleged violations of the TILA, all related to required disclosures concerning the plaintiff's rights and responsibilities as a credit card holder and borrower of the bank. *Id.* at 185–86. Applying *Spokeo*, we recognized that "an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a 'risk of real harm' to that concrete interest." *Id.* at 190. We noted, however, an important limitation: "[E]ven where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest." *Id.* at 190. A central inquiry, then, is whether the

particular bare procedural violation may present a material risk of harm to the underlying concrete interest Congress sought to protect. Accordingly, in *Strubel*, we held that those of the defendant's practices that "could cause consumers unwittingly not to satisfy their own obligations and thereby to lose their rights ... raise[d] a sufficient degree of the risk of real harm necessary to [establish] concrete injury and Article III standing," while other allegations where plaintiff "fail[ed] to demonstrate sufficient risk of harm to a concrete TILA interest from [defendant's] alleged failure[s]" were properly dismissed for lack of standing. *Id.* at 200.

## III. Material Risk of Harm under FACTA

█ Applying *Strubel*, the key inquiry here is whether Paris Baguette's alleged bare procedural violation—printing Crupar-Weinmann's credit card expiration date on her receipt—presents a material risk of harm to the underlying concrete interest Congress sought to protect in passing FACTA. We find it dispositive that in 2007, Congress clarified FACTA in the Credit and Debit Card Receipt Clarification Act of 2007 ("Clarification Act"), stating that "[e]xperts in the field agree that proper truncation of the card number, ... *regardless of the inclusion of the expiration date*, prevents a potential fraudster from perpetrating identity theft or credit card fraud." Pub. L. 110–241, § 2(a)(6), 122 Stat. 1565, 1565 (2007) (emphasis added). This makes clear that Congress *did not* think that the inclusion of a credit card expiration date on a receipt increases the risk of material harm of identity theft.

Crupar-Weinmann counters that the Clarification Act maintained FACTA's prohibition on printing credit card expiration dates on receipts, which reflects Congress's continued belief that the action does pose a material risk of harm. While we acknowledge that the Clarification Act maintained FACTA's prohibition on this practice, we decline to draw plaintiff's proposed inference, because in the same Act, Congress *expressly* observed that the inclusion of expiration dates *did not* raise a material risk of identity theft, presumably to curtail the "hundreds of lawsuits [that] were filed [after FACTA's passage] alleging that the failure to remove the expiration date was a willful violation ... even where the account number was properly truncated[, and n]one of these lawsuits contained an allegation of harm to any consumer's identity." Pub. L. 110–241 § 2(a)(4)–(5), 122 Stat. at 1565. Congress could not have been clearer in stating that "[t]he purpose of this Act is to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." *Id.* § 2(b), 122 Stat. at 1566. Given this clarification of FACTA, coupled with our holding in *Strubel* that a plaintiff must allege that, at a minimum, the bare "procedural violation presents a 'risk of real harm' to [her] concrete interest," 842 F.3d at 190, we conclude that the plaintiff here has not alleged in her amended complaint that Paris Baguette's bare procedural violation of FACTA posed a material risk of harm to her.[1] We thus join our sister Cir-

---

1. This is not to say that it is impossible to allege a different "bare procedural violation" of 15 U.S.C. § 1681c(g) for which some plaintiff might have standing. In a circumstance like this, however, where the plaintiff alleges no particular harm beyond a purely procedural violation, and Congress has found that *that* particular bare procedural violation does not increase the risk of the relevant material

cuit in concluding, in a case with a nearly identical set of allegations, that "[i]n these circumstances, it is hard to imagine how the expiration date's presence could have increased the risk that [plaintiff's] identity would be compromised." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 727 (7th Cir. 2016).

### CONCLUSION

For these reasons, we join the Seventh Circuit in holding that the printing of an expiration date on an otherwise properly redacted receipt does not constitute an injury in fact sufficient to establish Article III standing to bring a claim alleging a bare procedural violation of FACTA. Accordingly, the judgment of the district court is **AFFIRMED**.

harm, the plaintiff lacks standing to proceed with such a suit.

